UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUCENT TRANS ELECTRONICS CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> XENTRIS WIRELESS, L.L.C., <br><br> Defendant. | No. 23 CV 15992 <br><br> Judge Manish S. Shah |

### ORDER

Lucent's motion to dismiss the counterclaim, [19], is denied. The parties' status report with proposals for the remainder of the case schedule remains due July 23, 2024.

### STATEMENT

Plaintiff Lucent Trans Electronics, a manufacturer of cell phone accessories, sued defendant Xentris Wireless, LLC for breach of contract because Xentris cancelled purchase orders it had placed with Lucent after Lucent ordered and paid for component parts and Xentris has refused to compensate Lucent for those component parts. [1] ¶¶ 6–17.[1] Xentris responded with a breach of contract counterclaim alleging that Lucent's products were delivered late and did not meet quality standards, causing harm to and eventual cessation of Xentris's relationship with Verizon Wireless. [10] at 13–15 (¶¶ 5–18). Lucent filed a motion to dismiss the counterclaim for failure to state a claim. [19].

A court reviewing a Rule 12(b)(6) motion to dismiss accepts as true all well-pled facts alleged in the counterclaim and determines whether "the [counter-plaintiff] pleads factual content that allows the court to draw the reasonable inference that the [counter-defendant] is liable for the misconduct alleged." *Barwin v. Village of Oak Park*, 54 F.4th 443, 453 (7th Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A court will ignore allegations that simply re-state legal conclusions if there are no factual allegations to support those conclusions. *See Iqbal*, 556 U.S. at 678. When determining whether a claim is plausible, "a court will ask *could* these things

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers are taken from the CM/ECF header placed at the top of the filing. There is federal diversity jurisdiction over this matter because plaintiff is a Taiwanese company most similar in form to an American corporation and is a Taiwanese citizen. [23] at 2, 4. Defendant is a limited liability company organized in New York, none of its members are foreign citizens. [28] at 2; [29].

have happened, not *did* they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (emphasis in original).

The parties both analyze the contracts using Illinois law, so I will do the same. *See ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir. 1995). An Illinois breach of contract claim requires a plaintiff to allege: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill.App.3d 752, 759 (1st Dist. 2004). Lucent argues that Xentris's counterclaim fails to plausibly allege that any default on Lucent's part caused Xentris to lose its business relationship with Verizon and be damaged in the amount of $75,000,000. *See* [19] at 4.

Xentris alleges that in 2021, "in order to fulfill purchase requirements for Verizon, Xentris placed certain purchase orders with Lucent." [10] at 13 (¶ 10). Xentris alleges that Lucent "failed to … deliver products as set forth in the purchase orders" and "breached the Supply Agreement and purchase order agreements by failing to provide conforming products on a timely basis." [10] at 14 (¶¶ 14, 16). Finally, "[a]s a direct result of Lucent's actions and failure to timely deliver conforming products, Xentris' relationship with Verizon was materially damaged resulting in the cessation of twenty year business relationship." [1] at 14 (¶ 17). A reasonable inference from the allegation that the purchase orders were made "in order to fulfill purchase requirements for Verizon" is that failure to comply with the purchase orders would affect Xentris's business relationship with Verizon. Furthermore, the purchase orders attached to Xentris's counterclaim and Lucent's complaint show that the items ordered were "Verizon 30W Power Delivery 2.0 Vehicle Charger" or other items with "Verizon" in their name. *See* [10-1] at 3–5, 7, 10, 12, 14–17; [1-5] at 2–14. These allegations provide a sufficient basis to infer that Lucent knew that the purchase orders related to Verizon and that a reasonably foreseeable consequence of breaches of the purchase orders could be damage to the Xentris-Verizon relationship. *Cf. Vacuum Indus. Pollution, Inc. v. Union Oil Co. of California*, 764 F. Supp. 507, 511–12 (N.D. Ill. 1991), *aff'd* 958 F.2d 375 (7th Cir. 1992) (damages to plaintiff's ongoing business alleged to be due to accident at defendant's oil field were not reasonably foreseeable consequence of defendant's breach of its contractual duty to allow plaintiff to supervise work or test the safety of the entry operation).

Illinois law requires that a plaintiff plead that defendant's breach caused actual damage to the plaintiff. *See TAS Distributing Co., Inc. v. Cummins Eng. Co., Inc.*, 491 F.3d 625, 631 (7th Cir. 2007). But Lucent has not cited to any case that requires a plaintiff to show the calculation of its damages at the pleading stage. All the cases cited by Lucent for the proposition that the plaintiff "bears the burden of proving such damages with reasonable certainty" are discussing the standard of proof at summary judgment or trial. *See SK Hand Tool Corp. v. Dresser Indus., Inc.*, 284 Ill.App.3d 417, 426–27 (1st Dist. 1996) (addressing post-trial motions); *TAS Distributing Co., Inc.*, 491 F.3d at 631–35 (discussing standard for proving damages

2

in review of grant of summary judgment); *Midland Hotel Corp. v. Reuben H. Connelley Corp.*, 118 Ill.2d 306, 309, 315–18 (1987) (reviewing record established at trial to determine whether plaintiff met its burden of proof to show lost profits with reasonable certainty); *Evra Corp. v. Swiss Bank Corp.*, 673 F.2d 951, 954, 958–60 (7th Cir. 1982) (applying rule that only foreseeable damages are recoverable under breach of contract claim while reviewing record established at bench trial). Xentris may not ultimately be able to prove that Lucent's alleged breach caused it damages of $75,000,000, but Lucent has not cited any case that requires Xentris to *allege* the damages with reasonable certainty. Finally, the purchase orders from Xentris to Lucent are for amounts that range from $294,113.66 to $5,454,992.45, *see* [10-1], so it's plausible that Xentris's business with Verizon was a multi-million dollar relationship.

Lucent argues that an email from Xentris's CEO stating that Verizon had slowed down on ordering cell phone accessories because it was "dealing with an overage of inventory with very little consumer spending," [1-3] at 2, makes it implausible that Lucent's alleged breach caused the breakdown of Xentris's relationship with Verizon. *See* [19] at 8. I do not read that statement to be an admission that market conditions caused the breakdown of the business relationship between Verizon and Xentris. To recover any damages as alleged, Xentris will have to prove that the delayed and faulty products from Lucent proximately caused the breakdown of Verizon-Xentris's relationship, but it need not make that factual showing at this stage.

In its reply brief, Lucent raises arguments about whether Xentris pled its own substantial performance, including Xentris's failure to abide by the termination provision of the Supply Agreement. *See* [31] at 3–5. Issued raised for the first time in a reply brief are waived. *See Billhartz v. Comm'r of Internal Revenue*, 794 F.3d 794, 801 n.4 (7th Cir. 2015). Xentris denied that it materially breached the purchase order agreements in its answer to Lucent's complaint. [10] at 8 (¶ 22). A review of the pleadings satisfies me that Xentris has not admitted to breach of the underlying contracts.

The allegations of the counterclaim and the purchase orders provide a basis to reasonably infer that Lucent would have known that it was producing items for ultimate sale to Verizon and that breach of its duties under the purchase orders would affect Xentris's relationship with Verizon. That is sufficient to allege a resultant injury and Lucent's motion to dismiss Xentris's counterclaim is denied.

ENTER:

Date: July 22, 2024

Manish S. Shah
U.S. District Judge